GEORGE W. BRIDGES AND JOHN R. JOHNSON, PLAIN-
TIFFS IN ERROR, v. JOHN LANHAM, DEFENDANT IN
ERROR.

**Mills:** CONTRACT: BREACH: DAMAGES.   L. contracted with B.
& J. to construct a stone flume, to be completed by a day cer-
tain, on the site of a mill which had been destroyed by fire.   It
was the intention of B. & J., when the contract was made, upon
the completion of the flume, to erect thereon a corn feed mill for
temporary use, which intention was known to L.   The flume
was not completed until several months after the time provided
in the contract.   No corn feed mill was ever built.   In an action
by L. for the contract price of the flume, B. & J. recouped their
damages for the loss of the use of the corn feed mill, which they
were prevented from building by reason of plaintiff's failure to
complete the flume as contracted.   *Held,* That such damages
were too remote and uncertain, and an instruction to that effect
by the trial court to the jury upheld.

ERROR to the district court for Saline county.   Tried
below before WEAVER, J.

*Dawes & Foss,* for plaintiff in error, cited: *Hadley v.
Baxendale,* 9 Exch., 341.   *Paine v. Sherwood,* 9 Minn.,
315.   *Booth v. Spuyten Duyvil Co.,* 60 N. Y., 487.   *Gil-
bert v. Kennedy,* 22 Mich., 117.   2 Wait's Actions and
Defenses, 454.   *Griffin v. Colver,* 16 N. Y., 489.

*Hastings & McGintie,* for defendant in error, cited:
*French v. Ramge,* 2 Neb., 254.   *Howe v. Bryson,* 44 Iowa,
159.   *McEwen v. McKinnon,* 11 N. W. R., 828.

COBB, J.

This action was commenced in the court below by the
defendant in error against the plaintiffs in error for the
agreed price of a stone flume furnished and built by him
for them under a contract.

The defendants answered and set up as a defense and
counter-claim that it was a part of the said contract for the

building of the said flume, that the same should be erected and built in a good and workmanlike manner, and to the satisfaction of the said plaintiffs in error, and fully completed on or before the first day of December, 1880. That said plaintiff (defendant in error) did not perform the work and labor on said flume in a good and workmanlike manner, nor did he complete the flume on or before the first day of December, 1880, by reason of which non-completion of said flume, the defendants (plaintiffs in error) were damaged in the sum of $4,160.

2. That by reason of the said plaintiff's non-completion of said flume on or before the first day of December, 1880, as agreed, the said defendants were on the fifteenth day of December, 1880, compelled to do a great deal of work and labor in and about digging frozen ground, to protect the unfinished wall of said flume, to their damage in the sum of $75.00.

3. That by reason of the non-completion of said flume at said specified time, defendants were, on the 8th day of May, 1881, compelled to use and throw 10,000 bricks into the water above the flume to protect the flume, and to prevent the water from washing it away, to their damage in the sum of $80.00.

4. That during the erection of the said flume, stones were thrown down the embankment by the said defendant against the green and unfinished wall so being built, whereby said wall became crooked and out of shape, and in such a condition that it would not hold water, to the damage of defendants in the sum of $500.

5. That said flume was not built in a good and workmanlike manner, but on the contrary the same was very poor work, to the damage of defendants $400.

6. That by reason of the said flume not being completed at the time agreed, the said defendants were damaged in the sum of $500 by water running through the wall and washing away the embankment.

7. That defendants have laid out and expended large sums of money, to-wit: forty dollars for labor and cement in and about protecting the unfinished wall of said flume, which became necessary on account of the incompletion of said flume on or before the first day of December, 1880.

8. That by reason of the incompletion of said flume on or before the first day of December, 1880, the head gates of said defendants, near which said flume was being built, were washed out in the spring of 1881, whereby defendants were compelled to expend large sums of money and labor in replacing said head gates, to their damage of $500.

With a prayer for judgment for $5,315.00.

To which the plaintiff replied by a general denial.

There was a verdict and judgment for the plaintiff. Defendants bring the cause to this court on error.

There are a great number of errors complained of in the petition in error. There is, however, but one important question involved, and to which our attention will be chiefly, if not exclusively, confined in this opinion.

Upon the trial the court on its own motion, among others, gave to the jury the following instruction:

"5. In the opinion of the court the claim for damages for the want of the use of the mill, and the building of which is claimed to have been delayed, is too remote, and you will allow nothing for this claim."

The same point also arises upon the refusal of the court to give in charge to the jury the third, fifth, sixth, seventh, eighth, and ninth prayers of the defendants, by which a contrary opinion was sought.

In their brief and by argument at the bar, plaintiffs in error claim that their case comes within the rule laid down in *Hadley v. Baxendale*, 9 Exch. R., 341. *Booth v. Spuyten Duyvil Rolling Mill Co.*, 60 N. Y., 487. *Griffin v. Colver*, 16 N. Y., 489, and many other cases all following the case first named.

We had occasion to examine and cite the leading case of

*Hadley r. Baxendale* while writing the opinion in the case of *The Sycamore Marsh Harvester Co. v. Sturm*, 13 Neb., 210. The plaintiffs were the owners of a steam grist mill, and contracted with the defendant, a carrier of goods by railway, to carry for hire two pieces of iron, constituting the broken shaft of a mill, and deliver the same to an artificer who lived at a considerable distance, in order to serve as a model for a new shaft to be made for them by him. The defendant having violated his agreement by not delivering these pieces of iron within a reasonable time, a delay necessarily arose in supplying the new shaft. A shaft being indispensable to the working of the mill, and the plaintiff not having any other, the mill remained idle until the delivery of the new one; but although there was evidence that the defendant knew the mill was standing still, he was not aware that this was for the want of the shaft for which the iron delivered to him was to serve as a model. In this case the decision turned upon the want of knowledge on the part of the defendant, or of notice to him that the mill was lying idle solely for the want of the shaft, the necessary model for which he was failing to deliver to the mechanic who was depended upon to furnish it; and the want of evidence from which the court and jury could find that it was within the contemplation of the parties, the defendant as well as the plaintiffs, at the time of the making of the contract, that the mill would necessarily be idle to the plaintiff's damage until a shaft should be manufactured and furnished from the model, the carrying and delivery of which was the subject of the contract. The distinction between the above case and the case at bar consists chiefly in this: There the mill had been completed, had been in operation, and was probably a well-known manufacturing establishment of the neighborhood. Capital was actually invested in it. Probably a number of persons were employed in and about the mill; it had established customers, as well those who furnished the raw

Bridges v. Lanham.

material as those who purchased and used the manufactured product. Thus it is obvious that a continued suspension of its operations would be substantial and far-reaching in its effects. But here, while there was evidence tending to prove that it was the intention of the defendants below to erect a corn mill for temporary use, to be propelled by water supplied by the flume which the plaintiff contracted to erect, and that such intention was known to him, yet it is an undisputed fact that this mill had not been built; that it only existed in the intention and potential ability of the defendants to build it.

The case of *Griffin v. Colver et al.*, 16 N. Y., 489, was where the plaintiff agreed to build a steam engine with boilers, etc., for defendants, and deliver it to them on a day certain. He failed to do so, and a delay of one week occurred, during which time defendants lost the use of certain machinery for the sawing and planing of lumber, which the steam engine was intended to drive, and which the plaintiff knew it was intended to drive. The plaintiff having brought his action for the price of the engine, the defendants recouped their damages from the failure to deliver it at the time fixed by the contract. The referee allowed the defendants $50 as a proper compensation upon their investment on the value of the property, which was partially unoccupied by reason of the plaintiff's default. The defendants excepted to the report on this ground, but their exception was overruled. On their appeal the judgment was affirmed by the general term, and by them appealed to the court of appeals. Here the judgment was also affirmed, and in the opinion, the court say: "The broad, general rule in such cases is, that the party is entitled to recover all of his damages, including gains prevented, as well as losses sustained, and this rule is subject to but two conditions: The damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such

as might naturally be expected to follow the violation; and they must be certain both in their nature, and in respect to the cause from which they proceed." * * * The rent of a mill, or other similar property, the price of which would be paid for the charter of a steam-boat, or the use of machinery, etc., etc., are not only susceptible of more exact and definite proof, but in a majority of cases would, I think, be found to be a more accurate measure of the damages actually sustained in the class of cases referred to, considering the contingencies and hazards attending the prosecution of most kinds of business, than any estimate of anticipated profits; just as the ordinary rate of interest is upon the whole a more accurate measure of the damages sustained in consequence of the non-payment of a debt, than any speculative profit which the creditor might expect to realize from the use of the money. * * * The proper rule for estimating this portion of the damages in the present case was, to ascertain what would have been a fair price to pay for the use of the engine and machinery in view of all the hazards and chances of the business; and this is the rule which I understand the referee to have adopted."

I have been able to find no case, and certainly we have been cited to none, where it has been held that the price of the use of machinery not in existence, in a business yet to be established, can be estimated in any case. Such an estimate must necessarily lack the element of certainty, which we have seen is inflexibly required both in the nature of the damages, and in respect to the cause from which they proceed.

When we consider the changeable character of the human mind, as well as of all things in this life, who could say that a corn feed mill would certainly have been erected on the site in question had the flume been completed by December 1, 1880, or who could testify as to the capacity of such mill, or the value of its use per day, or

month? For aught that appears, or could properly appear, in this case, the funds for the building of said contemplated mill remained invested in more certain, if not more profitable security than were offered by the enterprise contemplated. It is obvious, therefore, that the rule of damages as laid down in *Griffin v. Colver* cannot be invoked in favor of the defendants in the case at bar. And the same may be said of that of *Hadley v. Baxendale*. Nor do I think that there is any case which furnishes an authority for giving damages as compensation for the loss of the use of the prospective mill which the plaintiffs contemplated but never built.

Plaintiffs in error make as points in their petition in error, the giving of the instructions prayed for by the plaintiff below, and the refusal to give the instructions prayed for by the defendants below; but as they do not designate the particular paragraph of the instructions objected to in the petition in error, nor point out the ground of objection in the brief, the same will not be examined.

They also make the point that the court erred in admitting the testimony of Thomas Lanham, a witness for the plaintiff, as to the time of making excavation, and conversation with Mr. Bridges at the brick yard.

This witness having testified that he was working on the flume for Bridges & Johnson in the fall of 1880; that they commenced some time in September; that he took six or seven men there to work—to excavate, is asked by the plaintiff's attorney:

Q. How long did you continue that excavation?

This question is objected to by defendants as immaterial and irrelevant. Being allowed to answer, witness answered:

A. I don't just remember on the first occasion.

Again he was asked:

Q. At the time did you hear any conversation between Bridges and Johnson and your brother (plaintiff) about coming back again and going to work?

A.   After that?

Q.   After that.

A.   Some time in October Bridges came to the brick yard.   Johnson was not there.

Objected to as immaterial.   Overruled.

Witness continued.   "He says, Where is Tom?  I says, Gone away.   He says, How is it you are not working at the flume ?   I says, He says you misrepresented the work, and he has stopped.   He says, I am sorry such a thing happened.   I says, That is what he told me. .  He says, Where is he ?   I says, Out west.   He says, Can you telegraph him ?   I says, I don't know where to telegraph to him.   He says, I am anxious to have the thing go along. I am anxious to get the work done.   I told him I would not go down and commence again unless I saw brother. He said he was sorry I did not know where to telegraph to, because he was anxious to get along with the work. That is all there was at that time."

While I fail to see either relevancy or materiality to the issues in the case in this testimony, yet it is quite clear that it could not and did not prejudice the defendants, nor could it even tend to mislead a jury of ordinary intelligence.

Plaintiffs also make the point in their petition in error "That the court erred in admitting the testimony of John Lanham, plaintiff, offered in rebuttal."

Upon examination of the record I find that the testimony of the plaintiff was offered in rebuttal.   It was received without objection on the part of the defendants. True, some questions put to him were objected to for cause, some of which objections were sustained and some overruled.   But the assignment of error is too general to enable the court to apply it to any part of the testimony.

The judgment of the district court is affirmed.

JUDGMENT · AFFIRMED.