## Richmond.

RICHMOND AND ALLEGHANY RAILROAD COMPANY v. R. A. PATTERSON TOBACCO COMPANY.

### March 12, 1896.

1. INTERSTATE COMMERCE—*Powers of Congress—State Laws.*—Congress has power, under the Constitution of the United States, to regulate commerce among the States, and this power embraces the power to regulate all the various agencies by which that commerce is conducted. State laws which undertake, in any form, to enforce a tax on such commerce, or to impose a burden or hindrance thereon, or to embarrass commercial intercourse and transactions, or to give citizens of one State any advantage over citizens of another State engaged in interstate commerce, are regulations of commerce among the States, and therefore void. This power, when exercised by Congress, is exclusive in its character, and the omission to exercise it is equivalent to a declaration of the will of Congress that it shall remain free and uncontrolled in those respects in which the subject is capable of being dealt with by general regulations.

2. INTERSTATE COMMERCE—*Common Carriers—Section 1295 of Code.*—Section 1295 of the Code is not a regulation of commerce among the States, and so is not in conflict with Article I., section 8, clause 3, of the Constitution of the United States. It levies no tax, prescribes no duty, imposes no burden upon, and in no way interferes with or regulates commerce between the States. It in no way diminishes the powers of the shipper and carrier to contract, nor does it in any way attempt to control the legal effect of such contract when made. It merely establishes a rule of evidence with reference to certain contracts of shipment not "in writing and signed by the shipper."

3. INTERSTATE COMMERCE—*Common Carriers—Section 1295 of Code.*—A common carrier is liable, under section 1295 of the Code, for the loss of goods beyond the terminus of his own line or route, if he accepts such goods for transportation to a point beyond such line or terminus, and fails to enter into a written contract with the shipper, signed by such shipper or his agent, exempting the carrier from

such liability. And this is true though the shipment be an inter-state shipment, and the carrier issues to the shipper a printed bill of lading, signed by the carrier only, in which it is stated that "it is mutually agreed that the liability of each carrier as to goods destined beyond its own route shall be terminated by proper delivery of them to the next succeeding carrier."

Appeal from a decree of the Circuit Court of the city of Richmond, pronounced February 14, 1893, in the chancery causes therein depending under the style of *Terrell and Bocock, Trustees,* v. *Richmond and Alleghany Railroad Company and Others,* and *Alexander and Ellyson, Trustees,* v. *Same.*

*Affirmed.*

The opinion states the case.

*Wm. J. Robertson* and *Henry Taylor, Jr.,* for appellants.

*Courtney & Patterson,* for the appellee.

Keith, P., delivered the opinion of the court.

The Patterson Tobacco Company filed its petition in the chancery causes styled *Terrell and Bocock, Trustees,* v. *Richmond and Alleghany Railroad Company and Others,* and *Alexander and Ellyson, Trustees,* v. *Same,* pending in the Circuit Court for the city of Richmond, from which it appears that on August 1, 1888, the tobacco company delivered to the receivers of the R. & A. R. R. Co. at Richmond a lot of tobacco consigned to Mann & Levy, at Bayou Sara, La., to be transported in accordance with the bill of lading filed with the petition.

The bill of lading is in the usual form, and acknowledges the receipt of the several boxes and packages shipped, their weight, and classification. Among other provisions it sets

out that it "is mutually agreed that if the ultimate destination of the packages received be beyond the point for which rates are named in the margin, they may, by the connecting carrier nearest to such ultimate destination, be delivered to any other carrier, to be transported to such ultimate point, and the carrier so selected shall be regarded exclusively as the agent of the owner or consignee."   *   *   *   "It is mutually agreed that the liability of each carrier as to goods destined beyond its own route shall be terminated by proper delivery of them to the next succeeding carrier."

From the agreed facts it appears "that the bill of lading is not signed by the shippers or their agent; that the tobacco in question was an interstate shipment; that it was delivered by the R. & A. R. R. Co. to the next succeeding carrier, and was lost after it had left the possession of the R. & A. R. R. Co.; that the sole question submitted to the court for decision was whether section 1295 of the Code was in conflict with Article I., section 8, clause 3, of the Constitution of the United States, it being agreed that, if said section was constitutional, the Richmond and Alleghany Railroad Company was responsible to the petitioner for the loss of the tobacco; but if it was in conflict with the aforesaid clause of the Constitution, then, under the terms of the bill of lading, filed with the petition, the railroad company was not responsible."

By its decree the Circuit Court held that section 1295 was not in conflict with the Constitution of the United States, and the prayer of the petition was granted and a decree entered in favor of the petitioner for the sum of $299.71; and thereupon the railroad company obtained an appeal and *supersedeas* from this court.

Section 1295, above referred to, is as follows:

"When a common carrier accepts for transportation any thing, directed to a point of destination beyond the terminus of his own line or route, he shall be deemed thereby to assume an obligation for its safe

carriage to such point of destination, unless, at the time of such accept-
ance, such carrier be released or exempted from such liability by con-
tract in writing signed by the owner or his agent; and, although there
be such contract in writing, if such thing be lost or injured, such com-
mon carrier shall himself be liable therefor, unless, within a reasonable
time after demand made, he shall give satisfactory proof to the con-
signor that the loss or injury did not occur while the thing was in his
charge."

That Congress has, under the Constitution of the United
States, the power to regulate commerce, is, of course, uncon-
troverted; that this power is, when exercised, exclusive in its
character, and that the omission on the part of Congress to
exercise the power over commerce with which it is clothed
is, in those respects in which the subject is capable of being
dealt with by general regulations, equivalent to a declaration
of the will of Congress that it shall remain free and uncon-
trolled, are propositions which seem to be thoroughly settled
by the decisions of the Supreme Court of the United States.
We need, therefore, only to inquire whether the statute just
quoted is a regulation of commerce. If it be, we must de-
clare it unconstitutional, as trenching upon a province beyond
the domain of State authority and over which Congress is
given exclusive jurisdiction.

The Supreme Court has construed clause 3, section 8, of
Article I., in many cases. It was held that the power to
regulate commerce among the States embraces the power to
regulate all the various agencies by which that commerce is
conducted. From these decisions it may be said that State
laws which undertake to enforce a tax upon interstate or
foreign commerce in any form, or any law of a State which
imposes a burden or hindrance upon commerce, or which
tends to embarrass commercial intercourse and transactions,
or which under any disguise or in any manner seeks to give
the citizens of one State any advantage over the citizens of
other States engaged in interstate commerce, are regulations

of commerce repugnant to the Constitution, and void. But that court, with its accustomed conservatism, content to watch over and guard our system of government as time and occasion may render its intervention necessary, has wisely refrained from all efforts at generalization or any attempt at enumeration of subjects, as being within or without the one jurisdiction or the other, which will furnish a safe guide in determining cases which have not come under its criticism.

It is, indeed, somewhat difficult to classify the adjudged cases and from them deduce harmonious rules of interpretation. Having given them, however, diligent investigation and our best consideration, we find that there is no reported decision which can be held directly to control the case before us.

Now, it is entirely clear that if there were no such statute law as that embodied in section 1295, there would be no liability upon the appellant, for it appears from the agreed facts that, in accordance with the provisions of the bill of lading, the packages entrusted to its care were duly delivered to the next succeeding carrier, and then its liability under the bill of lading terminated. At the first blush it would seem that the statute did regulate and control the bill of lading, which is conceded to be one of the instrumentalities of commerce. Upon a closer inspection of it, however, it is apparent that the law is careful to avoid any interference with the utmost freedom in the making of contracts, and does not in any way attempt to control the legal effect of the contract when made. It in effect establishes a rule of evidence.

The common law measure of liability being considered onerous and oppressive, the carrier is permitted to stipulate with the shipper so as to limit his responsibility, by the insertion of any just and reasonable ground of exemption. It has therefore come to pass that bills of lading, like policies of insurance, have been expanded into cumbrous documents,

in which the liability of the carrier is hedged about by almost innumerable exceptions, conditions, and exemptions, to which no one ought to be bound until they have been brought to his knowledge and attention and have received his intelligent approval. The statute does not say a certain exception, condition, or stipulation shall be void, though embraced in the contract between the shipper and the carrier, but it declares what shall be the implied liability upon the carrier who receives goods for shipment, in the absence of a special contract; and, in order to protect shippers from imposition, it further declares that the contract relied upon to reduce the measure of the implied liability must be in writing and signed by the shipper. For the protection of the insured it has been found necessary in this and other States to declare by statute that certain provisions in policies of insurance shall be void unless printed in type of a certain size, and the "statute of frauds" is, in some form, it is believed, a part of the jurisprudence of every State in the Union. The statute under consideration was doubtless conceived in a like spirit, as a necessary and salutary precaution and safeguard against the dangers to which experience had shown that shippers were exposed. Such contracts are not without precedent. There was such a contract, signed by the shipper, in *Hart* v. *Penn. R. R. Co.*, 112 U. S. 331.

State laws have been upheld which declare "all contracts, receipts, rules, and regulations   *   *   *   void" which exempt a railroad company, or other person, from full liability as a common carrier. See *Talbott* v. *Merchants Dispatch Company*, 41 Iowa, at page 249. It is true the constitutionality of the statute was not in terms passed upon, this case having been decided in favor of the contract, upon the ground that it was made in Connecticut; but the court distinctly asserts the validity of the Iowa law, which had been

upon the statute book for many years, and was expressly upheld in the case of *McDaniel* v. *Chicago, &c., R. R. Co.,* 24 Iowa 412, and a liability under it enforced; the contract of the parties being overridden by the law.

In Maryland a law which makes bills of lading in all respects negotiable was upheld, though no one need be told that it changed very materially the rights and liabilities of the parties, and was attended with far more serious and important consequences to shippers, consignees, and carriers than a law which only declares how a contract shall be evidenced. See *Tiedeman* v. *Knox*, 53 Md. 613. In the same connection, see *Shaw* v. *Merchants National Bank of St. Louis*, 101 U. S. 557, where Mr. Justice Strong, delivering the opinion, discusses at great length the interpretation and effect of the statutes passed by the States of Missouri and Pennsylvania, and shows very satisfactorily that those acts did not make bills of lading in all respects negotiable, while there is not one word to show that he at all questioned the power of the States so to make them, though a denial of the power would have gone to the very root of the subject under discussion.

So, too, statutes which render the principal responsible for the act of his agent in issuing bills of exchange have been upheld, and others of a like nature, which need not be mentioned.

Viewed, therefore, as a law which levies no tax, prescribes no duty, imposes no burden upon, and in no way interferes with or regulates commerce, and which in no manner diminishes the power to contract, but which merely requires certain contracts to be in writing and signed by the shipper, the party with respect to whom the duties and liabilities of the common carrier are by such special contracts to be limited, it seems to us that section 1295 of the Code, or rather the first branch thereof (the remainder of the section

having no bearing upon the question before us), which reads as follows: "When a common carrier accepts for transportation anything, directed to a point of destination beyond the terminus of his own line or route, he shall be deemed thereby to assume an obligation for its safe carriage to such point of destination, unless, at the time of such acceptance, such carrier be released or exempted from such liability by contract in writing signed by the owner or his agent," is not in conflict with the Constitution of the United States.

As was said by Judge Lewis in *Western Union Telegraph Co.* v. *Tyler*, 90 Va., at p. 300, where section 1292, which imposes a penalty upon telegraph companies for failure to deliver messages, was called in question as being a regulation of commerce, " if it can be said to affect commerce at all, it does so only remotely and incidentally."

Mr. Justice Matthews, in *Smith* v. *Alabama*, 124 U. S. 465, states the law with his usual force and accuracy, as follows: " It is among the laws of the States, therefore, that we find provisions concerning the rights and duties of common carriers of persons and merchandise, whether by land or by water, and the means authorized by which injuries resulting from the failure properly to perform their obligations may be either prevented or redressed. A carrier exercising his calling within a particular State, although engaged in the business of interstate commerce, is answerable, according to the laws of the State, for the acts of nonfeasance or misfeasance committed within its limits. If he shall fail to deliver goods to the proper consignee at the right time or place, he is liable in an action for damages under the laws of the State in its courts; or if, by negligence in transportation, he inflicts injury upon the person of a passenger brought from another State, a right of action for the consequent damage is given by the local law. In neither case would it be a defence that the law giving the right to

redress was void as being an unconstitutional regulation of commerce by the State. This, indeed, was the very point decided in *Sherlock* v. *Alling*, 93 U. S. 99. If it is competent for the State thus to administer justice, according to its own laws, for wrongs done and injuries suffered, when committed and inflicted by defendants while engaged in the business of interstate or foreign commerce, notwithstanding the power over those subjects conferred upon Congress by the Constitution, what is there to forbid the State, in the further exercise of the same jurisdiction, to prescribe the precautions and safeguards foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries which, after they have been inflicted, it is admitted the State has power to redress and punish? * * * * * * * "

" But for the provisions on the subject found in the local law of each State, there would be no legal obligation on the part of the carrier, whether *ex contractu* or *ex delicto*, to those who employ him; or if the local law is held not to apply where the carrier is engaged in foreign or interstate commerce, then, in the absence of laws passed by Congress or presumed to be adopted by it, there can be no rule of decision based upon rights and duties supposed to grow out of the relation of such carriers to the public or individuals. In other words, if the law of the particular State does not govern that relation and prescribe the rights and duties which it implies, then there is and can be no law that does until Congress expressly supplies it, or is held by implication to have supplied it, in cases within its jurisdiction over foreign and interstate commerce. The failure of Congress to legislate can be construed only as an intention not to disturb what already exists, and is the mode by which it adopts, for cases within the scope of its power, the rule of the State law, which, until displaced, covers the subject."

To the luminous exposition of the law contained in the

Opinion.

above quotation we feel that we can add nothing; therefore, without prolonging this discussion, we are, for the foregoing reasons, of opinion that section 1295 is a valid and constitutional law, and the decree of the Circuit Court is affirmed.

*Affirmed.*