CHOCTAW, OKLAHOMA AND GULF RAILROAD COMPANY v.
E. A. JACOBS.

(Filed September 5, 1905.)

1. CONTRACT—Anticipatory Damages. As a general rule, subject to well established qualifications, anticipated profits, prevented by the breach of contract, are not recoverable as damages for such breach.

2. SAME. Where the plaintiff in an action against a railroad company seeks to recover damages for delay in delivering freight, to entitle the plaintiff to recover, the damages sought must be such as may fairly and substantially be considered as arising naturally in the usual course of things, from the breach itself, or such as may reasonably be supposed to have been in contemplation of the parties at the time they made the contract. And if special circumstances under which the contract was actually made were communicated and made known to the railroad company, the damages resulting from the breach of such a contract would be the amount of injury which would ordinarily follow from a breach of contract under such special circumstances so communicated and known.

(Syllabus by the Court.)

*Error from the District Court of Oklahoma County; before*
*B. F. Burwell, Trial Judge.*

*C. B. Stuart* and *R. E. Campbell* for plaintiff in error.

*Shartel Keaton* and *Wells,* for defendant in error.

Opinion of the court by

BEAUCHAMP, J.:    This action was commenced by the
defendant in error against the plaintiff in error in the pro-
bate court of Oklahoma county, resulting in a judgment in
that court in the sum of one thousand dollars ($1000.00)
against plaintiff in error.    An appeal was taken to the dis-
trict court, trial had in that court, resulting in a judgment
against plaintiff in error in the sum of three hundred fifty
dollars ($350.00) and   costs.   Plaintiff in error   brings the
case here by petition in error and case made for review.

At the trial and upon the offer of the first witness by de-
fendant in error (plaintiff below) plaintiff in error (defend-
ant below) objected to the introduction of any evidence on the
part of defendant in error "for the reason that the damages
claimed consist of claims for future sales of goods, which does
not constitute a proper element of damage", which objec-
tion was by the court   overruled, and exceptions   saved, and
this is the first error complained of by plaintiff in error.

The petition, so far as necessary for an understanding of
the question raised, alleges:

"1.    That the defendant is and at all of the times here-
in mentioned was a corporation organized and existing un-
der and by virtue of the laws of the Territory of Oklahoma,
and a common carrier of goods, wares and merchandise.

"2.    That the plaintiff is, and for more than two years
last past, has been employed as travelling salesman for. the

firm of Keiffer Brothers, wholesale dealers in boots and shoes, of New Orleans in the state of Louisiana.

"3. That in the conduct of plaintiff's said business as traveling salesman the use of four cases of sample boots and shoes was absolutely essential, and prior to November, 1898, had been used by him in the conduct of said business and during the season for supplying the spring trade of 1899, to-wit, December 1898, and January 1899, the plaintiff's said business could not in any wise be conducted without said samples.

"4. That prior to November, 1898, said samples had been returned to said Keiffer Brothers at said New Orleans for necessary changes, and on November 5, 1898, said Keiffer Brothers shipped said samples to the plaintiff at Shawnee, in said Territory, where they arrived in the regular course of transportation, and on or about November 15, 1898, remained in the possession of the defendant at said Shawnee.

"5. That on or about November 15, 1898, the plaintiff applied to the defendant at said Shawnee to have said samples reshipped to said Keiffer Brothers at said New Orleans for the purpose of having further necessary changes made therein, and at the same time informed the defendant that said samples were essential to the conduct of his said business, and that he could do nothing in his said business without said samples during the season for supplying the spring trade of 1899, to-wit, December 1898, and January, 1899; and the defendant then and there verbally agreed and contracted with plaintiff, in consideration of the freight charges, to carry said four cases of samples to New Orleans and deliver same to the said Keiffer Brothers within a reasonable time thereafter, and then and there took up the bill of lading which plaintiff had received from said Keiffer Brothers for said goods.

"6. That a reasonable time for the transportation of said samples from said Shawnee to said New Orleans in and during November 1898, was a period of not to exceed one week from and after the time of such contract for reship-

ment, and that by the exercise of reasonable diligence the defendant should have transported said goods to said New Orleans and delivered the same to said Keiffer Brothers on or about November 22, 1899.

"7.   That owing to the negligence of the defendant said samples were lost by the defendant in the course of transportation from said Shawnee to said New Orleans, and that for a long and unreasonable period, to-wit, nearly two months, the defendant made no diligent  effort to ascertain  the whereabouts thereof; and owing to the negligence of the defendand in losing said samples and in not sooner ascertaining the whereabouts of the same, said samples did not arrive at said New Orleans nor were they delivered to said Keiffer Brothers until on or about January 17, 1899.

"8.   That when said samples were received by said Keiffer Brothers at said New Orleans it was too late to make the said changes and reship said samples to plaintiff in time to be used by him in any wise in his said business during the season for supplying the  spring 1899 trade  as hereinafter stated; that on the other hand, if said samples had been received by said Keiffer Brothers within a reasonable time as hereinafter stated, said changes could have been made and said samples reshipped to the plaintiff in time to be used by him in his said business during the season for supplying the spring 1899 trade as hereinafter stated.

"9.   That owing to the negligence of the defendant as aforesaid that plaintiff was prevented from conducting his said business of traveling salesman for a period of two months to-wit, during December 1898 and January 1899; that said period was the season for supplying the spring trade of 1899, and plaintiff was wholly unable to supply said spring trade by reason of not having said samples during said period; and plaintiff was unable to procure other samples in time to conduct his said business and supply said spring trade or any part thereof; and plaintiff was unable, under the circumstances aforesaid, to secure any other employment during

said time whatsoever, but while daily expecting to be notified by the defendant that his said samples had been found, plaintiff remained idle during the whole of said period.

"10.   That by reason of the foregoing, plaintiff had lost the commissions which he would have received but for the negligence aforesaid, of the defendant in the sum of at least eight hundred dollars ($800.00) and the good will of plaintiff's said business has been injured by the negligence aforesaid of the defendant in the sum of at least two hundred dollars ($200.00)"

As will be seen by the petition, defendant in error seeks to recover damages because of alleged loss of commissions which he claims that he would have earned by the sale of goods but for the unreasonable delay in the transportation and delivery at their proper destination of the samples shipped, and for loss of good will of his business by reason of such delay.   By sections 2746 W. S. 1903, it is provided that:

"The detriment caused by a carrier's delay in the delivery of freight is deemed to be the depreciation in the intrinsic value of the freight during the delay and also the depreciation, if any, in the market value thereof otherwise than by reason of a depreciation in its intrinsic value at the place where it ought to have been delivered and between the day at which it ought to have been delivered and the day of its actual delivery."

So that there being no claim for loss in either the market of intrinsic value of the goods shipped, there can be no recovery under the allegations of the petition unless the knowledge imparted to the railroad company by defendant in error was sufficient to put it upon notice that the loss of commissions and loss of good will would be the direct and immediate result of delay in the delivery of the goods shipped, for under the provisions of the statute and in the absence of a special

Vol. 15—32.

contract to that effect, or the existence of such circumstances and knowledge as would charge the railroad company with notice that the alleged loss would be the direct and immediate result of failure to promptly deliver the goods, the only damages that could reasonably be contemplated is that disclosed by the statute, for the legislature has clearly defined what shall be deemed to be the damages for the delay in delivery of freight by common carriers in ordinary cases. It is not alleged in the petition that the railroad company contracted in specific terms that in the event of delay in the delivery of the goods that it would pay for the loss of commissions and of good will, so that the only question for our determination is, was the railroad company apprised of such facts as would put it upon notice that if it delayed the delivery of the goods shipped that Jacobs would sustain the loss complained of? Or was the contract under which the goods were shipped sufficient from its nature and terms to imply that the railroad company in case of default upon its part would pay the loss of commissions?

In the case of *Howard v. Stillwell & Bierce Mfg. Co.* 139 U. S. 199, being a case involving a contract by the manufacturing company to construct a flouring mill for Howard by placing machinery therein of the capacity of two hundred barrels of flour each twenty four hours, and to have the same completed by a certain time, the manufacturing company brought suit for the balance due on the contract, and Howard sought to offset the loss of profits occasioned by the failure of the manufacturing company to complete the contract within the time agreed, and offered testimony to show:

"That the market price per barrel for flour of the grade the contract sued upon stipulated for, between the middle of

July, 1895, and the middle of September, 1895, was $5 per barrel; that during that period there was a ready cash market value in Texas for said grade of flour at $5 to $5.50 per barrel and that the defendants could have sold 200 barrels per day during said period at $5 per barrel, and that upon each barrel so sold they would have realized $1 per barrel profit: that defendents had purchased and held on storage during said period a sufficient quantity of good wheat to have manufactured 200 barrels per day during said sixty days; that the market price during said period of such wheat was 60c to 70c per bushel, and that the expense of turning such wheat into flour during said period was 80c per barrel, and that defendants had in their employ all necessary laborers and skilled workmen to manufacture said wheat into flour, and were fully equipped with fuel and water and everything necessary to convert said wheat into flour, save and except the parts and pieces of said mill which plaintiff contracted to furnish in the contract sued on."

.The court, having on motion stricken from the defendant's answer that part which sought to recover for loss of profits expected to be derived rom sale of flour, sustained an objection to this evidence and the supreme court of the United States in the opinion by Mr. Justice Lamar say:

"The remaining assignment of error, which relates to the striking out of so much of the defendant's plea as sought a recovery of the profits, and the refusal of the court to allow any evidence to be introduced in support of it, needs no extended consideration. The question raised by it is, whether the anticipated profits of the defendants resulting from grinding wheat into flour and selling the same, had the mill been completed at the date specified in the contract, can be recovered by way of damages for delay in putting up the mill machinery.

"The authorities both in the United States and England are agreed that as a general rule, subject to certain well es-

tablished qualifications, the anticipated profits prevented by the breach of a contract are not recoverable in the way of damages for such breach; but in the application of this principle the same uniformity in the decisions does not exist. In some cases of almost exact analogy, in the facts, the adjudications of the courts in the different States are directly opposite. The grounds upon which the general rule of excluding profits, in estimating damages, rests, are (1) That in the greater number of cases such expected profits are too dependent upon numerous, uncertain and changing contingencies to constitute a definite and trustworthy measure of actual damages; (2) because such loss of profits is ordinarily remote, and not, as a matter of course the direct and immediate result of the non-fulfilment of the contract; (3) and because most frequently the engagement to pay such loss of profits, in case of default in the performance is not a part of the contract itself nor can it be implied from its nature and terms. (Sedgwick on Damages, [7th ed.] vol. 1, p. 108; *The Schooner Lively* 1 Gallison 315, 325, per Justice Story; *The Anna Maria,* 2 Wheat, 327; *The Amicable Nancy,* 3 Wheat. 546; *La Amistad de Rues,* 5 Wheat. 385; *Smith v. Condry,* 1. How. 28; *Parish v. United States,* 100 U. S. 500; *Bulkley v. United States,* 19 Wall. 37.) But it is equally well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where by the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into. (*United States v. Behan,* 110 U. S. 338, 345, 346, 347; *Western Union Tel. Co. v. Hall,* 124 U. S. 444, 454, 456; *Philadelphia, Wilmington & Baltimore Railroad Co. v. Howard,* 13 How. 307.)

"Cases illustrating various phases of this rule are numerous. One of the leading cases applicable to the case in ques-

tion is *Hadley v. Baxandale,* decided in the court of Exchequer at Hilary term, 1854, 9 Exch. 341, 354, 356. In that case the plaintiffs, who were the owners of a flour mill, sent a broken iron shaft to the office of the defendants, who were common carriers, to be conveyed by them to a manufacturer of such machinery, the broken shaft to serve as a model or pattern for the new one. The clerk of the defendants in their office was told that the mill was stopped, that the shaft must be delivered immediately and that a special entry would be made, if necessary, to hasten its delivery. The delivery of the broken shaft to the manufacturer was delayed an unreasonable length of time, in consequence of which the plaintiff did not receive the new shaft for some days after the time it ought to have been received, and they were, therefore, unable to work their mill from want of the new shaft, thereby incurring a loss of profits. It was held, however, that such loss of profits could not be recovered as damages in an action against the defendants as common carriers. Baron Alderson, in delivering the opinion of the court, laid down the rule of law as follows: 'Now, we think the proper rule in such a case as the present is this: Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e. according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. It follows, therefore, that the loss of

profits here cannot be considered reasonably such a consequence of the breach of contract as could have been fairly and reasonably contemplated by both parties when they made this contract.   For such loss would neither have flowed naturally from the breach of this contract in the great multitude of such cases occurring under ordinary curcumstances, nor were the special circumstances which, perhaps, would have made it a reasonable and natural consequence of such breach of contract, communicated to or known by the defendants.'

"That case has been cited with approval and commented on by many of the courts of this country and by text writers as well.   The general principles of it, we believe, are recognized and enforced, in most, if not all, of the several states. A large number of the cases are referred to in Sedgwick on the Measure of Damages, vol. 1, 66-75, and 5 Ency. of Law, pp. 13, 15, 32-4, and we shall attempt no extended review of them.   We shall content ourself with a reference to a few of the leading ones most nearly similar to the one before us.

"*Pennypacker v. Jones,* 106 Penn. , St. 237, was very much like the present one.   In that case the plaintiffs, who owned and operated a flour mill in Philadelphia, entered into a contract with the defendants by certain of the terms of which the defendants were to place in their mill, within a specified time, machinery of a certain capacity; to make flour of a high grade.   The machines when furnished were found not to make a high grade of flour, and to be incapable of producing the stipulated number of barrels per day.   In an action for damages by the plaintiff for breach of the contract, it was held that the loss of possible profits, which might have been made if the mill had run properly, and was not a proper subject for damages, for the reason that such damages were too remote and speculative.   In delivering the opinion of the court, Mr. Justice Green used this language: 'It was no part of this contract that the   plaintiffs should make   profits or even have the opportunity of doing so, by carrying on a business with the machinery which the defendants agreed to erect.

It is not like to the sale of chattels or of land, where the differences between the contract value and the actual or market value of the property sold represents directly and immediately the measure of the party's loss or gain in the transaction. There the possible profit is the very object of the contract, and is necessarily in the contemplation of the parties. But when a machinist furnishes machinery to a mill owner it is no part of his engagement that a profitable business shall be carried on with the machinery furnished. Of course if it is defective he is responsible for the damage resulting directly from such defect; but that is a very different thing from the uncertain, remote and speculative profits which may or may not be made in the business to be done.'

"In *Callaway Mining and Manufacturing Co. v. Clark*, 32 Missouri, 305, which was an action for the seizure and detention of a steamboat by an attachment which was discharged, it was held that the measure of damages was only the actual damage sustained by the seizure, and that the jury could not be permitted to speculate as to what might or might not have been the earnings of the boat during the period of the seizure

"*Blanchard v. Ely*, 21 Wend. 342, was an action for the price of a steamboat. The defense was that part of the machinery of the boat was unsound and imperfect, whereby considerable delay was caused; and that the loss of the probable profits that would have been made upon the trips that might have been run during the time the vessel was delayed on account of the imperfections in its construction, might be recouped in the action for the price of the boat. But the court held that such contingent profits could not be allowed. (See also *Olmstead v. Burke*, 25 Illinois 86; *Winnie v. Kelley*, 34 Iowa 339; *Howe Machine Co. v. Bryson*, 44 Iowa 159; *Freeman v. Clute*. 3 Barb. 424; *Griffin v. Colver*, 16 N. Y. 489; *Wakeman v. Wheeler & Wilson Mfg. Co.* 101 N. Y. 205; *Brown v. Smith*, 12 Cush. 366; *Boyd v. Brown*, 17 Pick. 453; *Willingham v. Hooven*, 74 Ga. 233; *Georgia Railroad v.*

*Hayden,* 71 Ga. 518; *Bridges v. Lanham,* 14 Neb. 369; *Houston & Tex. Cent. Ry. Co. v. Hill* 63 Texas 381; *Smith v. Condry,* 1 How. 28.)

"The principles announced by the above cited authorities lead to the conclusion that the court did not err in striking out that part of the defendants' plea which sought to recover $12,000 as the profits expected to be derived from the sale of the flour which they would have manufactured, and in excluding the evidence offered in support of the claim therein set up. Tested by them, such losses were, in our opinion, rather remote and speculative than direct and immediate, resulting from the breach alleged. There was no stipulation in the contract that the defendant should make profits on flour from the wheat ground up by the machinery which the plaintiff contracted to furnish and erect in the mill. Nor were there any special circumstances attending the transaction from which an understanding between the parties could be inferred that the plaintiff was to make good any loss of profits incurred by a delay in furnishing and putting up such machinery, according to the terms of the contract. We see no error in the judgment of the court below prejudicial to the plaintiffs in error."

See *Tootle et al v. Kent et al,* 12 Okla 674 and cases therein cited.

There is no allegation in the petition that the agent for the railroad company had any knowledge that Jacobs was working on commission, and that his compensation depended upon the sales of goods by him, or that he would in any way suffer loss by delay in delivering the goods or that he had an established trade, and that delay would occasion loss of custom. Nor were there any special circumstances attending the transaction from which the agent for the railroad company could or would infer any of these things as a natural and probable result of delay. Giving to the petition the

most favorable construction, the most that could possibly be said is that the railroad company agent was informed that the goods to be shipped were samples essential to the conduct of Jacobs' business, and that he could do nothing in his business without the samples during that season. From this information it cannot be said that the company's agent would reasonably infer that Jacobs was a salesman selling on commission, and that his compensation was dependent upon the sales made by him, or that he would lose his trade by delay, or in fact, that he would probably suffer any loss whatever.

Many authorities might be cited, some of which perhaps may be apparently difficult to reconcile in view of the facts under consideration, but the rule as laid down in the case of *Hadley v. Baxendale* has been approved and followed by the supreme court of the United States, and by the courts of most of the states.; and while as we say some cases may be found in apparent conflict as to the right of recovery under a particular state of facts, there is no conflict as to the rule that the damages sought must be such as may fairly and substantially be considered as arising naturally in the usual course of things, from the breach itself, or such as may reasonably be supposed to have been in contemplation of the parties at the time they made the contract as the probable result of the breach of it. And if special circumstances under which the contract was actually made were communicated and made known to the parties, the damages resulting from the breach of such a contract would be the amount of injury which would ordinarily follow from a breach of contract under such special circumstances so communicated and known.

"In order to recover profits in case of a breach of contract, such profits must have been within the contemplation

of the parties at the time that the contract was made, and where such profits do not enter into the contract itself they will be denied. Anticipated damages, different from those which would ordinarily be sustained, are not always recoverable." (13 Cyc. page 36.)

The objection to the introduction of evidence should have been sustained.

At the trial the defendant in error testified as to the conversation with the agent of the railroad company substantially as alleged in the petition. At the conclusion of the evidence, plaintiff in error moved the court to direct the jury to return a verdict for the defendant, which motion was by the court overruled, and exception allowed, and which ruling of the court is also assigned as error. It necessarily follows from the conclusions reached as to the allegations in the petition that the court erred in not sustaining the motion and giving the instruction requested. There are other assignments of error but as the conclusion reached by us necessarily requires a reversal of the judgment of the trial court, it will not be necessary to consider them at this time.

The judgment of the district court is reversed at cost of defendant in error, and remanded to that court with directions to vacate the judgment and order overruling the motion for a new trial, and to grant a new trial.

Burwell, J., who presided in the court below, not sitting; all the other Justices concurring.