Statement.

## Richmond.

NORFOLK AND WESTERN RAILWAY CO. v. WILKINSON.

March 21, 1907.

Absent, Whittle, J.

1. CARRIERS—*Delay in Delivery—Evidence—Liability of Initial Carrier.* In an action for damages, brought under section 1295 of the Code of 1887, against an initial and connecting carriers for delay in the transportation and delivery of goods, if the shipper proves the delivery of the goods to the initial carrier, the delay and the resulting damages, and the defendants introduce no evidence to show by whom the delay was occasioned, the shipper is entitled to a judgment against the initial carrier for the damages shown. Upon such a showing, the burden is on the initial carrier to show proper delivery to the connecting carrier and freedom from negligence on its part.

2. CARRIERS—*Delay in Delivery—Measure of Damages.*—The measure of damages in an action against a carrier for delay in the transportation and delivery of goods is the loss which the fulfillment of the contract would have prevented, or which the breach of it has entailed. The general intent of the law is to put the injured party, so far as money can do it, in the same position as if the contract had been performed.

3. APPEAL AND ERROR—*Objections in Trial Court.*—Where a restrictive provision of a bill of lading was not relied on or considered in the trial court, and no motion was there made to exclude the evidence as to the carrier's liability because of the non-performance thereof, it will be deemed to have been waived, and cannot be insisted on for the first time in this court.

Error to a judgment of the Law and Chancery Court of the city of Norfolk in an action of trespass on the case. Judgment for the plaintiff against one of the defendants who assigns error.

*Reversed.*

The opinion states the case.

*Hughes & Little,* for the plaintiff in error.

*G. M. Dillard* and *Peters & Lavinder,* for the defendant in error.

CARDWELL, J., delivered the opinion of the Court.

Plaintiff in error owns and operates a railroad from Pulaski and other points in the southwestern section of Virginia to Norfolk, Va., from which latter point there are connections with other transportation lines to the north. From Roanoke, Va., it runs a branch line north to Hagerstown, Md., and to Washington, D. C., and at these two latter points it also has connections with other lines of railroad running to New York city and other points north.

On the 1st day of July, 1903, defendant in error shipped by plaintiff in error's line a carload of lumber from Pulaski, Va., consigned to himself in New York city, the same being shipped in a Baltimore and Ohio car. The bill of lading was made out by the agent of the shipper, describing the shipment as one car oak lumber, no routing being designated, and the bill of lading, signed by both parties, constituted an agreement that the plaintiff in error should carry the shipment to destination if on its line, otherwise to deliver it to another carrier on the route to destination. The shipment was carried by plaintiff in error, the initial carrier, to Norfolk and there delivered to the Old Dominion Steamship Company for transportation to destination. During the course of transportation there occurred a delay which caused the shipment not to be delivered to the consignee in New York until September 30, 1903. Being unable to get a settlement of the damages claimed by him as having been sustained by reason of the delay in delivering his carload of lumber at its point of destination, defendant in error in

June, 1905, brought this action against plaintiff in error and the Old Dominion Steamship Company to recover said damages.

At the trial on July 10, 1905, the defendants severally demurred to the evidence introduced by defendant in error, the same consisting entirely of depositions taken in his behalf, relying, to sustain their demurrers, upon the fact that defendant in error, in his proof, had merely shown delivery of the shipment in good condition to the initial carrier, and the delay in its final arrival in New York, without fixing any responsibility therefor upon either defendant, and upon the additional ground that there was no proof of the proper measure of damages. The court sustained the Old Dominion Steamship Company's demurrer to the evidence and entered judgment in its favor, but overruled the demurrer of plaintiff in error, holding that under the proof there was a presumption that the initial carrier was liable, in the absence of proof to the contrary. The jury found a conditional verdict for $337.50, with interest from July 10, 1903, and although the court ruled against plaintiff in error on its demurrer to the evidence, it, on the motion of plaintiff in error, set aside the verdict of the jury because it was considered that there was no proof of damage according to the measure of damages in such cases established, to which ruling setting aside the jury's verdict, defendant in error excepted, and his bill of exception was duly made a part of the record.

The verdict having been set aside the court then entered an order awarding a writ of inquiry, by which a new jury was to be impaneled and the defendant in error was to be allowed to put in new proof of damages in accordance with the legal requirements, if he could do so; the new verdict as to damages to be based upon the liability against plaintiff in error as determined upon the decision on the demurrer to the evidence. This course of procedure plaintiff in error objected to and protested against, for the reason that, as its demurrer to the evidence had been entered on the faith of the evidence as it then

stood, and in part reliance on defendant in error's having failed to legally prove his damage, regarding this as an element of liability, it would be unfair to allow the defendant in error to introduce additional evidence unless the case should be re-opened on all the facts, and it should have the option, after the introduction of the additional evidence, whether to demur or not. It took the position that the only course consistent with the court's ruling would be to enter a judgment for nominal damages, or to grant a new trial on the whole case, and allow plaintiff in error also to introduce additional evidence and to show that, as between the two carriers, the delay complained of did not occur while the lumber was in its possession. Plaintiff in error, therefore, moved the court to allow it to withdraw its demurrer to the evidence, which was refused, and it excepted to the action of the court in awarding the writ of inquiry, which exception was overruled and the order entered accordingly.

At the trial, October 31, 1905, on the writ of inquiry, the jury having been impaneled to settle the question of damages upon the evidence that might be introduced, sundry rulings of the court were excepted to, and the trial resulted in a verdict in favor of defendant in error for $330.50, with interest, which verdict plaintiff in error moved the court to set aside and grant it a new trial, but the motion was overruled and judgment entered on the verdict. It is to this judgment that the writ of error under consideration was awarded.

From our standpoint there are but two questions presented requiring consideration. The first is whether or not the court below, at the first trial, erred in overruling plaintiff in error's demurrer to the evidence; and, second, did the court err in setting aside the verdict of the jury at the first trial and awarding the writ of inquiry, providing for additional proof as to damages?

When the cause of action in this case arose, section 1295 of the Code of 1887 was in force, which provided: "When a common carrier accepts for transportation anything directed

to a point of destination beyond the terminus of his own line or route, he shall be deemed thereby to assume an obligation for its safe carriage to such point of destination, unless, at the time of such acceptance, such carrier be released or exempted from such liability by contract in writing signed by the owner or his agent; and, although there be such contract in writing, if such thing be lost or injured, such common carrier shall himself be liable therefor, unless, within a reasonable time after demand made, he shall give satisfactory proof to the consignor that the loss or injury did not occur while the thing was in his charge."

In the general Act concerning public corporations, approved January 18, 1904 (Virginia Code, 1904, page 708), the former statute (section 1295, *supra*), is, by section 1294 (1) of the latter, repealed by implication, and the material difference between the two Acts is that the latter leaves out the provision contained in the former, that "unless, at the time of such acceptance (of the shipment) such carrier be released or exempted from such liability by contract in writing signed by the owner or his agent," and provides that such a contract shall not exempt the common carrier, railroad or transportation company, from the liability of a common carrier which would exist had no contract been made or entered into. In other words, under section 1294 (1), *supra,* a public service corporation cannot by contract stipulate for exemption from liability to a shipper when it accepts for transportation anything directed to a point of destination beyond the terminus of its own line or route; "and the fact of loss or damage in such case shall itself be *prima facie* evidence of negligence, and the common carrier, railroad or transportation company issuing any such receipt or bill of lading shall be entitled to recover in a proper action the amount of any loss, damage or injury it may be required to pay to the owner of such property from the common carrier, railroad or transportation company aforesaid through whose negligence the loss, damage or injury may be sustained."

The ruling of the lower court on the demurrer to the evi-

dence in favor of the Old Dominion Steamship Company, but against plaintiff in error, the carrier who had received defendant in error's shipment and agreed to carry it to destination or to deliver (which implies delivery within a reasonable time) the goods to a connecting carrier, but who declined to introduce evidence to show that it had fulfilled its part of the contract, is in accordance with not only the policy of our statutes on the subject, but with the general principles of law fully recognized by the courts.

The rule as to the liability of the initial carrier is stated in 5 Am. & Eng. Ency. of L. (2d Ed.) 254, 255, as follows: "It seems, however, that on proof of delay in delivery a *prima facie* case is made against the carrier, and the burden of proof rests on it to show that the delay was from a cause for which it was not responsible. It rests on the carrier for the additional reason that such facts are peculiarly within the knowledge of the carrier, and not easily ascertained by the shipper."

The same authority—6 Am. & Eng. Ency. of L. (2d Ed.) 623—says: "The shipper makes out a *prima facie* case upon proof of the loss or injury and of the defendant carrier's having received the goods in good order; upon such a showing the burden of proof is shifted to the carrier to show a safe delivery in good order to the next carrier. Thus the initial line may always be held liable, upon proof of its having received the goods, unless it can properly show a safe delivery to the second carrier." Again, at page 653, the same authority says: "The rule rests upon the recognized principle in the law of evidence, by which the burden of proof of a negative averment is cast upon a party purely because of his better ability to adduce proof on the subject."

In a note to *R. & A. R. Co. v. Patterson Tob. Co.*, 1 Va. L. Reg. 917 (92 Va. 670, 24 S. E. 261, 41 L. R. A. 511), by the learned editor, the late Judge Burks, referring to the rule established by the Federal courts and courts of last resort in most of the states, when goods are delivered to a common car-

rier to be transported to a particular point of destination, that the liability of the carrier ceased when and as soon as he delivers the goods to the next succeeding carrier, if the place of destination was beyond the line or route of the first, receiving carrier, it is said: "This rule was deemed not only inconvenient but extremely hard on the shipper. He could seldom, if ever, know along what line or over what route the receiving carrier would order the transportation, and hence if loss or damage occurred in the transportation he would not know to which carrier to resort for indemnity, and was, in many instances, practically without any adequate redress in case of loss or damage to his goods. It was in view of this defect in the law, apparent to the most casual observer, that section 1295 of the Code, following the English rule in such cases, was proposed and adopted. Its wisdom cannot be controverted unless it is in conflict with the Constitution of the United States, and it is demonstrated by the court in its opinion that there is no such conflict." The opinion of this court in that case was reviewed on appeal by the Supreme Court of the United States and affirmed. 169 U. S. 311, 42 L. Ed. page 759, 18 Sup. Ct. 335.

It would be a denial of justice, as it seems to us, if the law withheld from a shipper, in such a case as this, the right of recovery, where from the nature of the case he is powerless to trace the negligence to the particular carrier concerned, and where, perhaps by agreement between them, each declines to introduce evidence to establish its own freedom from negligence, because the establishment of this freedom from negligence of the one would place the fault on the other.

It is earnestly contended on behalf of plaintiff in error that as the proof entitled the defendant in error to recover only nominal damages, if any damages at all, there was error in the ruling of the lower court that on the evidence defendant in error had a right of recovery in this action against plaintiff in error. This contention will be met in the consideration of

the remaining question in the case, which involves a review of the evidence as to the damages allowed by the jury at the first trial.

Not only did defendant in error except to the ruling of the trial court setting aside the verdict of the jury as to the quantum of damages to which the defendant in error was entitled, and embodied the exception in a bill of exception, duly signed and made a part of the record, but has nowhere and at no time waived his right to a reversal of the trial court if this ruling should be considered by this court to be error.

As has been observed the shipment, which is the subject of this controversy, was from Pulaski, Va., on the 1st day of July, 1903, to New York city, and it arrived at its point of destination on September 30, 1903; whereas, if it had been delivered according to the terms of the contract between the porties—that is, within a reasonable time—it should have arrived at the point of destination within fifteen or twenty days, certainly within thirty days at the most, from the day on which the shipment was made at Pulaski, Va.

Defendant in error filed with his declaration a bill of particulars, showing the several items of his claim, as follows:

1904.
"March 1.   To difference between market value (and price which had been offered for) carload of oak lumber shipped from Pulaski to New York on July 1, 1903, and market value of and price at which the said lumber was sold after delayed arrival in New York ...........................$268.11
To interest on above from July 15, 1903, to date ..........................   ——

To extra cost of storing and handling said
   lumber till the same could be sold, due to
   delay in delivery ...................   69.46
To interest on above from March 1, 1904,
   to date ..........................   ——

                                               $337.57

With interest as above."

In support of his claim thus made the deposition of one H. M. Hoskins, who was defendant in error's sales agent, and was, at the time of the shipment and at the time of the delivery of the lumber, located in New York city and conversant with the market in that city, is relied on. This witness testified as follows:

"Q. Did the plaintiff sustain any damage because of this delay, and if so, will you state how much said damage was, and how it arose?" "A. The plaintiff's actual loss between the amount the stock was sold for and what it was originally invoiced at was $337.57."

"Q. Had the plaintiff sold this car when he shipped it to New York?" "A. He had."

"Q. I will ask you how you know this lumber had been sold?" "A. The sale was made through my office."

"Q. If I understand you, then, $337.57 represents the difference between the price for which you had sold this car of lumber and the price you actually got for the same when it reached New York." "A. Yes."

"Q. What caused the reduction in price?" "A. This lumber was rejected by the original buyer on account of delay in arrival."

"Q. Was the lumber market at the time of delivery—that is, in September, 1903—rising or falling?" "A. Falling."

"Q. I will ask you to state how much of plaintiff's loss which you have placed at $337.57 represents money paid out because

of delay in delivery, and how much represents loss of profits?"
"A. $69.46 represents the charges which accrued on the ship-
ment having to be placed in storage; $268.11 represents the
loss otherwise."

On cross-examination by counsel for plaintiff in error:

"Q. What was done with the shipment of lumber when it
finally arrived in New York?" "A. It was placed in storage."

"Q. By whom?" "A. By me, on the storage yard of the
New York Lumber and Storage Company."

"Q. With what result?" "A. Could not make disposition,
or get any buyer to make an offer, as prices were uncertain."

"Q. Do you mean that you could not get any offer at all?"
"A. No."

"Q. What steps were taken to place the lumber before
buyers for sale?" "A. I personally called on different buyers
of this class of lumber, and offered the car to them."

"How did the market at that time compare with the market
at the time the lumber was finally sold?" "A. The market
was in better condition at the time the lumber was sold."

On re-examination:

"Q. You have stated that the plaintiff's actual loss was
$183.38. Do I understand you to mean that this represents
amount actually paid out by the plaintiff and not including
profits on the shipment?" "A. Yes."

"Q. Then the profits lost by the delay would be the dif-
ference between $337.57 and $183.38, is that right?" "A.
That is right."

The general rule as to the measure of damages for breach
of contract is well recognized. At page 914, 5 Cyc. Law, it is
stated thus: "The damages recoverable for breach of a con-
tract are such as may be fairly and reasonably considered to
arise naturally from the breach, or such as may reasonably be
supposed to have been in contemplation of the parties at the
time they made the contract, as the probable result of the
breach." See among other authorities cited in support of the

text *Choctaw, &c., R. Co.* v. *Jacobs* (Okl.) 82 Pac. Rep. 502, 15 Okl. 493, a case very similar to the case at bar, and where the verdict of the jury for the plaintiff was upheld.

In *Duke* v. *N. & W. Ry. Co.*, *ante*, p. 152, 55 S. E. 548, the opinion, by KEITH, P., quotes, with approval, *Hadley* v. *Baxendale*, 9 Ex. 373, among the first cases laying down the rule of law just adverted to, and also quotes from *Griffin* v. *Colon*, 16 N. Y. 494, 69 Am. Dec. 718, where the rule is unqualifiedly sanctioned. Also from the case of *Structural Steel Car Co.*, Am. Bankruptcy Cas., Vol. XIII, page 313, where, in discussing the measure of damages for a breach of a contract, the opinion says: "The measure of damages in a case like this is the value of the bargain to the complaining party or the loss which the fulfillment of the contract would have prevented, or which the breach of it has entailed. . . . The general intent of the law is to put the injured party, so far as can be done by money, in the same position as if the contract had been performed."

The evidence in this case, set out above, upon which the jury found their verdict, shows the difference between the market value of the lumber, at the date of shipment, as evidenced by the contract price which had been offered defendant in error at that date, and the market price of the same lumber when it was sold, after the delay in delivery, with the storage charges during the time that the lumber was held in New York for a rising market, the holding for a rising market and the expense incident thereto having been made necessary by the delay in delivering the shipment according to contract. The evidence further shows that if the lumber had been sold immediately on arrival, over two months late, the loss would have been still greater, and that defendant in error's agent did all in his power to diminish the loss. The amount allowed by the jury was, in accordance with the evidence, simply sufficient to put defendant in error, so far as could be done by money, in the situation which he would have occupied but for plaintiff in error's fault.

The point is made in the petition for this writ of error, though not pressed in the oral argument, that as one of the conditions on the back of the bill of lading provides that claim must be made in writing within thirty days after delivery of property, or after due time for the delivery thereof, and failure to make claim within this time releases the carrier from liability in any event.

Leaving out of view the question whether or not this provision applied only to "loss" or "damage" to goods, and not to a claim for unreasonable delay in the shipment, as to which question we express no opinion, it need only be said that this provision on the bill of lading was not relied on or considered in the lower court. Nor was there a motion on behalf of plaintiff in error to exclude the evidence as to plaintiff in error's liability because of non-performance of said requirement, and a failure to object to such evidence is usually regarded as a waiver of the benefit of the requirement.

It becomes unnecessary to consider the question arising out of the second trial of the case, as we are, for the reasons stated, of opinion that the lower court erred in setting aside the verdict of the jury at the first trial; and that ruling will be reversed and annulled, and this court will enter the judgment the lower court should have entered in favor of defendant in error against plaintiff in error for the damages ascertained by the jury, with interest, as stated in their verdict.

*Reversed.*